EXHIBIT S


# Cooley
## GODWARD KRONISH LLP

Janet L. Cullum
(212) 479-6500
jcullum@cooley.com

BY HAND

February 12, 2010

Honorable Richard M. Berman
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

RE:   *Xenomics, Inc. v. Sequenom, Inc.*, No. 09 CV 10192 (RMB)

Dear Judge Berman:

    We represent Sequenom in this action and write to advise the Court of an additional issue we anticipate raising at the pre-motion conference next Tuesday – the fact that the contract at issue in this case (the "License Agreement") requires arbitration of this dispute.

    Section 11.2 of the License Agreement provides, in relevant part, that if the parties cannot resolve any dispute that arises out of or relates to the Agreement through the informal dispute resolution procedure set forth in Section 11.1:

> then, upon the written request of either Party, the dispute shall be finally settled (i) if by the request of SEQUENOM, by arbitration to be held in New York, New York, USA, and (ii) <u>if by the request of XENOMICS, by arbitration to be held in San Diego, California</u> . . . (emphasis added).

    The arbitration provision in question is a broad one, covering "any dispute, controversy or claim that arises out or relates to this Agreement." License Agreement at Section 11.2 For the Court's convenience, we are attaching a copy of the Section 11 of the License Agreement.

    Thus, if Xenomics believed that there was a dispute that required resolution, it was obligated to commence arbitration in San Diego. Accordingly, Sequenom anticipates moving pursuant to the Federal Arbitration Act for an order dismissing (or in the alternative staying) this action. To avoid any confusion, Sequenom does <u>not</u> intend to move to compel arbitration, but rather, to dismiss or stay this action and require Xenomics to commence arbitration if it seeks to resolve the issues it has raised in this action. *See Broadcort Capital Corp. v. Dutcher*, 859 F. Supp. 1517 (S.D.N.Y. 1994) ("[C]ourts have not interpreted the FAA as requiring a Section 3 motion to be joined with a Section 4 motion to compel arbitration . . . . Thus, we find that



Honorable Richard M. Berman
February 12, 2010
Page Two

[defendant] not only has a present right to compel arbitration and is therefore entitled to a Section 3 stay, but also that a Section 3 motion to stay does not necessarily have to be coupled with a Section 4 motion to compel arbitration.")

Respectfully,

Janet L. Cullum

Enclosure

cc: David Jaroslawicz, Esq. (by e-mail; w/ enclosure)

## LICENSE AGREEMENT

THIS LICENSE AGREEMENT is made as of the 29th day of October, 2008 (the "Effective Date"), by and between Sequenom, Inc., with its principal place of business at 3595 John Hopkins Court San Diego, California ("SEQUENOM") and Xenomics, Inc., with its executive offices at 420 Lexington Avenue, Suite 1701, New York, NY 10170 ("XENOMICS").

## RECITALS

WHEREAS, XENOMICS owns the Licensed Patents set forth on Exhibit A, and

WHEREAS, SEQUENOM wishes to obtain a license from XENOMICS under the Licensed Patents, and XENOMICS wishes to grant such a license to SEQUENOM to certain specified rights under the Licensed Patents within the Field.

NOW THEREFORE, for and in consideration of the covenants, conditions and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, SEQUENOM and XENOMICS agree as follows:

## AGREEMENT

1. **DEFINITIONS**. All defined terms in this Agreement shall have the meaning assigned to them in this Section 1 or elsewhere in this Agreement and shall apply both to the plural and singular forms of each term, as the context may require. "I/including" means "including without limitation." "Days" refers to calendar days unless otherwise specified. "H/herein," "hereof," "hereunder" or similar expressions refer to this Agreement in its entirety. "Section" means the referenced section herein, unless otherwise stated. SEQUENOM and XENOMICS are sometimes collectively referred to herein as the "Parties" and individually as a "Party." "Exhibit" refers to Exhibit A appended and incorporated into this Agreement.

   1.1. Agreement. "Agreement" means this License Agreement and Exhibit A.

   1.2. Affiliate. "Affiliate" means, with respect to any Person, at the time in question, any other Person that directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with such Person. For purposes of this definition, "control" (including the terms "controls," "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether by contract, through the ownership of voting securities or otherwise.

   1.3. Combination Product. "Combination Product" means a product that contains a Licensed Product component and at least one other product(s) or process(es) which is a functional component that: (a) is not itself a Licensed Product; and (b) adds material value to the Combination Product. For example, a Licensed Product sold in combination with one or more other products, materials, or services is a Combination Product.

10.2. <u>Termination for Breach</u>. Either Party has the right to terminate this Agreement, by written notice to the other Party, in the event that such other Party is in material breach of any of its representations, warranties or covenants in Sections 7.1 or 7.2 or any other material obligation under this Agreement and the breaching Party has not cured such breach within thirty (30) days after written breach notice from the non-breaching Party.

10.3. <u>Termination by Sequenom</u>. SEQUENOM has the right to terminate this Agreement for any reason, in SEQUENOM's sole and absolute discretion, upon sixty (60) days prior written notice to XENOMICS.

10.4. <u>Effect of Termination</u>.

(1) Upon termination of this Agreement for any reason, nothing herein will be construed to release either Party from any obligation that matured prior to the effective date of such termination.

(2) Upon termination of this Agreement for any reason, SEQUENOM shall immediately cease all sales and marketing of Licensed Products and terminate all existing sublicenses in accordance with the terms thereof.

(3) Upon termination of this Agreement for any reason, all payments owed to XENOMICS as of the date of termination shall be due no later than sixty (60) days after the date of termination.

(4) Upon termination of this Agreement for any reason, each Party shall promptly return, if requested by the other Party, all of the other Party's materials and documents, and all Confidential Information of the other Party.

(5) Sections 1, 3, 4, 5, 6.1, 8, 9, 10.4, 11 and 12 shall survive expiration or termination of this Agreement for any reason.

## 11. DISPUTE RESOLUTION

11.1. <u>Negotiation</u>. The parties agree to consult and negotiate in good faith to try to resolve any dispute, controversy or claim that arises out of or relates to this Agreement. In the event of any controversy or claim arising out of, relating to, or in connection with any other provision of this Agreement, or the rights or obligations of the parties hereunder, the parties shall try to settle their differences amicably between themselves by referring the disputed matter to the Chief Executive Officer of XENOMICS and the Chief Executive Officer of SEQUENOM for discussion and resolution. Either Party may initiate such informal dispute resolution by sending written notice of the dispute to the other Party, and within fifteen (15) days of such notice the Chief Executive Officer of XENOMICS and the Chief Executive Officer of SEQUENOM shall meet for attempted resolution by good faith negotiations.

11.2. <u>Arbitration</u>. If such Chief Executive Officers are unable to resolve such dispute within sixty (60) days of initiating such negotiations, then, upon the written request of either Party, the dispute shall be finally settled (i) if by the request of SEQUENOM, by arbitration to

15

be held in New York, New York, USA, and (ii) if by the request of XENOMICS, by arbitration to be held in San Diego, California, in either case in accordance with the Comprehensive Arbitration Rules and Procedures of JAMS, before a panel of three arbitrators selected as follows: one arbitrator shall be selected by XENOMICS, one arbitrator shall be selected by SEQUENOM, and a third arbitrator shall be selected by the two arbitrators selected by the Parties. The parties shall be entitled to full discovery in such arbitration. The arbitration panel shall be permitted to award a Party its reasonable attorneys' fees and other reasonable legal fees and expenses incurred in connection with the arbitration proceedings. The decision of the arbitration panel shall be final and binding upon the parties and may be enforced in any court of competent jurisdiction.

12. GENERAL

    12.1. Assignment. This Agreement will be binding upon and will inure to the benefit of each Party and each Party's respective transferees, successors and assigns; provided, however, that neither Party will have the right to assign or delegate this Agreement or its rights and obligations hereunder to any other Person without the prior written consent of the other Party, except that, no such consent will be required in the event of an assignment or delegation to an Affiliate or in the event of the assigning or delegating Party's merger, acquisition, consolidation, change of control or sale or other transfer of such Party's entire business or that part of such Party's business to which this Agreement relates, provided, in all such cases, that any such assignee or delegatee has agreed in writing to be bound by this Agreement. Any purported assignment or delegation in violation of the provisions of this paragraph will be null and void.

    12.2. Entire Agreement/Amendments. This Agreement constitutes the sole, final and entire agreement between the Parties relating to the subject matter hereof, and all prior agreements or understandings are superseded hereby. This Agreement may only be amended by a writing signed by both Parties.

    12.3. Notices. All notices, reports, requests, acceptances, and other communications required or permitted under this Agreement will be in writing and will reference this Agreement. They will be deemed delivered: (i) when delivered in person, (ii) when sent by acknowledged facsimile or acknowledged e-mail, (iii) two (2) business days after having been sent by commercial overnight courier with written verification of receipt, or (iv) five (5) business days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or upon actual receipt thereof, whichever occurs first. An acknowledged e-mail communication or fax will be deemed to be a communication in writing. All communication will be sent to the receiving Party as follows or to such address that the receiving Party may designate pursuant to this Section 12.3.

                If to SEQUENOM:    Sequenom, Inc.
                                       Attn: General Counsel
                                        3595 John Hopkins Court
                                        San Diego, CA 92121
                                        Fax: (858) 202-9020